1   ROBERT A. COCCHIA (SBN 172315)
    robert.cocchia@dentons.com
2   RACHEL L. ROSS (SBN 322881)
    rachel.ross@dentons.com
3   DENTONS US LLP
    4655 Executive Drive, Suite 700
4   San Diego, CA  92121
    Telephone:  (619) 236-1414
5   Facsimile:  (619) 232-8311

6   Attorneys for Defendant
    Consumer Reports, Inc.
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  NINO KOLLER and MICHELLE          Case No.   '20 CV0660 JLS  KSC
    BROWN, individually and on behalf of all
12  others similarly situated,
                                      San Diego County Superior Court Case
13                      Plaintiffs,   No. 37-2020-00011819-CU-BT-CTL

14          vs.
                                      DECLARATION OF ROBERT A.
15  CONSUMER REPORTS, INC., a New     COCCHIA IN SUPPORT OF
    York nonprofit corporation; and DOES 1-   DEFENDANT'S NOTICE OF
16  50, inclusive,                    REMOVAL OF ACTION

17                      Defendants.

18

19

20

21

22

23

24

25

26

27

28

                              1

1    I, Robert A. Cocchia, declare and state:

2    1.    I am an attorney licensed to practice law in the State of California and am

3    an attorney with the law firm of Dentons US LLP, counsel of record for Consumer

4    Reports, Inc. ("Consumer Reports") in this action. All of the facts set forth in this

5    declaration are known to me personally and if called as a witness in this proceeding I

6    would testify competently to them.

7    2.    Attached hereto as Exhibit "A" is a true and correct copy of the complaint

8    filed on March 2, 2020 by Plaintiffs Nino Koller and Michelle Brown (collectively,

9    "Plaintiffs") in the Superior Court of the State of California, County of San Diego,

10   entitled *Koller v. Consumer Reports, Inc.,* Case Number 37-2020-00011819-CU-BT-

11   CTL (the "State Court Action").

12   3.    Attached hereto as Exhibit "B" is a true and correct copy of the Civil Case

13   Cover Sheet filed by Plaintiffs in the State Court Action.

14   4.    Attached hereto as Exhibit "C" is a true and correct copy of the Summons

15   filed by Plaintiffs in the State Court Action.

16   5.    Attached hereto as Exhibit "D" is a true and correct copy of the Proof of

17   Service of Summons filed by Plaintiffs in the State Court Action.

18   6.    Attached hereto as Exhibit "E" is a true and correct copy of the Notice of

19   Case Assignment and Case Management Conference on Mandatory eFile Case that was

20   served along with the complaint filed by Plaintiffs in the State Court Action.

21   I declare under penalty of perjury under the laws of the United States of America

22   that the foregoing is true and correct.  Executed this 6th day of April, 2020 at San

23   Diego, California.

24                                     *s/Robert A. Cocchia*
                                        ROBERT A. COCCHIA
25

26

27

28

2

## INDEX OF EXHIBITS TO DECLARATION OF ROBERT A. COCCHIA IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

| Exhibit | Description | Pages |
|---------|-------------|-------|
| A | Complaint filed in the SDSC, entitled *Nino Koller, et al. v. Consumer Reports, Inc.,* Case Number 37-2020-00011819-CU-BT-CTL | 4-51 |
| B | Civil Case Cover Sheet | 52-53 |
| C | Summons | 54-55 |
| D | Proof of Service of Summons | 56-57 |
| E | Notice of Case Assignment and Case Management Conference on Mandatory eFile Case | 58-59 |

114491801\V-2

3

# EXHIBIT A

JAMES T. HANNINK (131747)
jhannink@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530
La Jolla, California 92037-1474
Tel: 858-623-4200
Fax: 858-623-4299

Attorneys for Plaintiffs

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**03/02/2020** at 12:02:01 PM

Clerk of the Superior Court
By Iris Tellez, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN DIEGO

| | |
|---|---|
| NINO KOLLER and MICHELLE BROWN, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>CONSUMER REPORTS, INC., a New York nonprofit corporation; and DOES 1-50, inclusive,<br><br>      Defendants. | CASE NO.  37-2020-00011819-CU-BT-CTL<br><br>CLASS ACTION<br><br>COMPLAINT FOR:<br><br>(1) FALSE ADVERTISING - VIOLATION OF THE CALIFORNIA AUTOMATIC RENEWAL LAW;<br><br>(2) VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT;<br><br>(3) VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; and<br><br>(4) UNJUST ENRICHMENT.<br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT

## INTRODUCTION

1.      This class action complaint alleges that defendant Consumer Reports, Inc. ("Consumer Reports") violates California law in connection with the marketing and sale of subscription programs.  Among other things, Consumer Reports enrolls consumers in automatic-renewal or continuous service subscriptions without providing the "clear and conspicuous" disclosures mandated by California law, and posts charges to consumers' credit or debit cards for purported automatic renewal or continuous service subscriptions without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures.  This course of conduct violates the California Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.) ("ARL"), the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) ("CLRA"), and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) ("UCL").

## THE PARTIES

2.      Plaintiff Nino Koller ("Koller") is an individual residing in San Diego County, California.

3.      Plaintiff Michelle Brown ("Brown") is an individual residing in San Diego County, California.  Koller and Brown are collectively referred to herein as "Plaintiffs."

4.      Plaintiffs are informed and believe and thereon allege that defendant Consumer Reports is a New York nonprofit corporation that does business in San Diego County, including the marketing of magazine subscriptions.

5.      Plaintiffs do not know the names of the defendants sued as DOES 1 through 50 but will amend this complaint when that information becomes known.  Plaintiffs allege on information and belief that each of the DOE defendants is affiliated with the named defendant and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of or with one or more of the other defendants.  For ease of reference, Plaintiffs will refer to the named defendant and the DOE defendants collectively as "Defendants."

6.      Venue is proper in this judicial district because the complained of conduct occurred in this judicial district.

## **BACKGROUND**

7.     Consumer Reports provides consumers with product reviews through a monthly magazine entitled *Consumer Reports*, which is available in a print and/or digital format.

8.     Traditionally, magazine publishers sold subscriptions on the basis of a schedule that reflects a fixed price for a definite term (such as one, two, or three years). Under that arrangement, the consumer selects the desired price/term combination and submits payment. Later, when the end of the term is approaching, the consumer is notified that the subscription will soon come to an end and is provided with a renewal offer. If the consumer wishes to renew, he or she selects the desired price/term combination for the renewal period and submits the corresponding payment. Alternatively, if the consumer does not renew, the subscription comes to an end.

9.     During the 1990s, some marketers came to view the traditional model as constraint on sales and profits, and advocated instead adoption of a "negative option" model. In a "negative option," the seller "interpret[s] a customer's failure to take affirmative action, either to reject an offer or cancel an agreement, as assent to be charged for goods or services." (See "*Negative Options*," Federal Trade Commission, January 2009, available at https://www.ftc.gov/sites/default/files/documents/reports/negative-options-federal-trade-commission-workshop-analyzing-negative-option-marketing-report-staff/p064202negativeoptionreport.pdf [last accessed March 2, 2020].) Defendants have implemented a negative option model that does not comply with California law.

10.     Defendants have adopted a negative option model in which they solicit orders for magazine subscriptions that purport to be for a fixed period of time (e.g., one year, or two years), whereas upon receipt of an order, Defendants enroll the consumer in a program under which the magazine subscription will be "automatically renewed" for subsequent periods, with corresponding charges posted to the consumer's credit card, debit card, or other payment account. Defendants enroll consumers in such "automatic renewal" subscriptions without making the clear and conspicuous disclosures required by California law.

---

3

# SUMMARY OF APPLICABLE LAW

## The California Automatic Renewal Law

11.    In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010 as Article 9 of Chapter 1 of the False Advertising Law.  (Bus. & Prof. Code, § 17600 *et seq.* (the California Automatic Renewal Law or "ARL").)  SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

(See Exhibit 1 at p. 4.)

12.    The Assembly Committee on Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

(See Exhibit 2 at p. 8.)

13.    The ARL seeks to ensure that, before there can be a legally-binding automatic renewal or continuous service arrangement, there must first be adequate disclosure of certain terms and conditions and affirmative consent by the consumer.  To that end, Bus. & Prof. Code § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

(1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same

4

1  size, or set off from the surrounding text of the same size by symbols or other marks, in a manner

2  that clearly calls attention to the language." (Bus. & Prof. Code, § 17601(c).)  In the case of an

3  audio disclosure, 'clear and conspicuous' means in a volume and cadence sufficient to be readily

4  audible and understandable." (*Id.*) The statute defines "automatic renewal offer terms" to mean the

5  "clear and conspicuous" disclosure of the following: (a) that the subscription or purchasing

6  agreement will continue until the consumer cancels; (b) the description of the cancellation policy

7  that applies to the offer; (c) the recurring charges that will be charged to the consumer's credit or

8  debit card or payment account with a third party as part of the automatic renewal plan or

9  arrangement, and that the amount of the charge may change, if that is the case, and the amount to

10  which the charge will change, if known; (d) the length of the automatic renewal term or that the

11  service is continuous, unless the length of the term is chosen by the consumer; and (e) the minimum

12  purchase obligation, if any. (Bus. & Prof. Code § 17601(b).)

13  (2) Charge the consumer's credit or debit card, or the consumer's account with a

14  third party, for an automatic renewal or continuous service without first obtaining the consumer's

15  affirmative consent to the agreement containing the automatic renewal offer terms or continuous

16  service offer terms, including the terms of an automatic renewal offer or continuous service offer

17  that is made at a promotional or discounted price for a limited period of time. (Bus. & Prof. Code

18  § 17602(a)(2).)

19  (3) Fail to provide an acknowledgment that includes the automatic renewal or

20  continuous service offer terms, cancellation policy, and information regarding how to cancel in a

21  manner that is capable of being retained by the consumer. (Bus. & Prof. Code § 17602(a)(3).)

22  14.  Bus. & Prof. Code § 17602(b) requires that the acknowledgment specified in

23  § 17602(a)(3) include a toll-free telephone number, electronic mail address, a postal address if the

24  seller directly bills the consumer, or it shall provide another cost-effective, timely, an easy-to-use

25  mechanism for cancellation that shall be described in the acknowledgment.

26  15.  If a business sends any goods to a consumer under a purported automatic renewal or

27  continuous service arrangement without first obtaining the consumer's affirmative consent to an

28  agreement containing the "clear and conspicuous" disclosures as specified in the ARL, the goods

5

1   are deemed to be an unconditional gift to the consumer, who may use or dispose of them without

2   any obligation whatsoever. (Bus. & Prof. Code, § 17603.) In addition, violation of the ARL gives

3   rise to restitution and injunctive relief under the general remedies provision of the False Advertising

4   Law, Bus. & Prof. Code § 17535. (Bus. & Prof. Code, § 17604, subd. (a).)

5                    **FACTS GIVING RISE TO THIS ACTION**

6   **Nino Koller's Transaction with Defendants**

7          16.    In October 2018, Plaintiff Koller downloaded a Consumer Reports app on his iPhone

8   and submitted an order for a one-year subscription to *Consumer Reports*. Koller paid $55.00 for

9   that one-year subscription (print and digital), which amount was paid with Koller's credit card.

10  Koller believes that the online checkout screens were similar to what is depicted in Exhibit 3. On

11  that basis, Koller alleges that the checkout screen through which he submitted the order and made

12  the payment did not contain clear and conspicuous disclosure of automatic renewal offer terms as

13  required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1) and (a)(2).

14         17.    On October 8, 2018, Koller received an email from Defendants confirming that his

15  subscription was active, with a "Start Date" of October 8, 2018 and an "End Date" of October 7,

16  2019. A true and correct copy of that email is attached hereto as Exhibit 4. That email does not

17  contain clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. &

18  Prof. Code § 17601(b) and (c) and § 17602(a)(3).

19         18.    In October 2019, without Koller's authorization or consent, Defendants posted a

20  charge of $59.00 to Koller's credit card, purportedly for renewal of *Consumer Reports*.

21         19.    When Koller submitted the order for the one-year subscription to *Consumer Reports*,

22  he was not aware that Defendants were going to enroll him in a program under which the

23  subscription would automatically renew for subsequent periods, and he did not consent to be

24  enrolled in such a program. If Koller had known that Defendants were going to enroll him in an

25  automatically renewing subscription program, Koller would not have submitted the order for

26  *Consumer Reports* and would not have paid any money to Defendants.

27

28

                                      6

**Michelle Brown's Transaction with Defendants**

20.     In March 2017, Brown responded to an offer from Defendants to receive *Consumer Reports* for ten months at a discounted rate of $20.00.  Brown accepted the offer and provided Defendants with her credit card information in order to complete the purchase.  Brown does not remember whether she provided her credit card information to Defendants over the internet or in writing.  Brown does not have a copy of either the advertisement to which she responded or the form by which her credit card information was submitted to Defendants.  Brown is informed and believes and thereon alleges that both the advertisement to which she responded and the form by which her credit card information was submitted are in the possession, custody, or control of Defendants.  Therefore, Brown will seek production of the advertisement/order form and the payment form from Defendants through discovery.

21.     When Brown submitted the order form and when she made the $20.00 credit card payment, she was not aware that Defendants were going to enroll her in a program under which the subscription would automatically renew for subsequent periods, and she did not consent to be enrolled in such a program.   On that basis, Brown is informed and believes that the advertisement/order form to which she responded and the payment form through which the credit card payment was submitted did not contain clear and conspicuous disclosure of automatic renewal offer terms as required by Bus. & Prof. Code § 17601(b) and (c) and § 17602(a)(1) and (a)(2).  Brown believes this allegation will likely have documentary support after a reasonable opportunity for discovery.

22.     In July 2017, without Brown's authorization or consent, Defendants posted a charge to Brown's credit card in the amount of $26.00.  Subsequently, without Brown's authorization or consent, Defendants posted additional charges to Brown's credit card in the amount of $26.00 in July 2018 and again in July 2019.

23.     In or about December 2019, Brown realized for the first time that her credit card had been charged by Defendants for purported renewal of *Consumer Reports*.  Upon discovering that fact, Brown called to cancel her subscription.  Defendants cancelled her subscription and refunded her $16.00.

7

1    24.    If Brown had known that Defendants were going to enroll her in an automatically

2 renewing magazine subscription program, Brown would not have submitted the order for *Consumer*

3 *Reports* and would not have paid any money to Defendants.

4    **EXPERIENCES OF OTHER CONSUMERS**

5    25.    Plaintiffs are not the only consumers to be charged without consent in connection

6 with Defendants' magazine subscriptions.    There are consumer complaints about similar

7 experiences posted on a variety of websites, including but not limited to consumeraffairs.com and

8 pissedconsumer.com.

9    26.    The consumer complaints below were reported on consumeraffairs.com by

10 consumers in California.

11    **Shonya.  Penn Valley, California (October 25, 2019).**  They auto renewed my
membership which I absolutely remember not authorizing when I joined last year.  I

12 called them the very day they charged me for an additional year within minutes of
the email coming through.  While they cancelled my membership, they would not

13 refund the total amount.  Even though it had been 10 minutes, they charged me for a

14 whole month.  Crooks!  I will never join again, they are totally dishonest.

15 A true and correct printout of that complaint is attached as Exhibit 5.

16    **Kimberly.  Huntington Beach, California (October 15, 2018).**  Consumer Reports
charged my credit card (October 2018) after canceling this account almost 10 years

17 ago.  The customer service rep said "after you cancel auto renew, you need to cancel
every year so you don't get charged"!  What?!  I have to call every year AFTER I

18 cancel the account?  This is fraudulent and I plan to investigate this further.  They
should not be able to get away with charging canceled decade-old accounts!  All of

19 the information they provide is online for FREE through customer reviews.  They're

20 obviously hurting for cash and trying to find ways to stay around.  Not cool!

21 A true and correct printout of that complaint is attached as Exhibit 6.

22    **Lucinda.  Thousand Oaks, California (April 23, 2015).**  Years ago I enrolled in
CR for what I thought was a year.  Every year I attempt to be discontinued from their

23 billing access to my credit card but these guys have become as corrupt as those they
deemed to protect American population from.

24

25 A true and correct printout of that complaint is attached as Exhibit 7.

26    27.    A few of the customer reviews of Consumer Reports posted on pissedconsumer.com

27 are shown below.

28

8

1    **San Jacinto, California (June 28, 2016).** I am thoroughly discussed with Consumer's Report! I had gone online last month and cancelled my upcoming renewal scheduled for this month.

2

3    Unbeknownst to me, they automatically debited $30.00 from my account this morning! When I called the company they said that they had never received my cancellation.

4

5    It should be a law that ANY automatic debits should be prefaced with an email alert at least 72 hours before, a my very credible Geico insurance company does on a monthly basis. I will most definitely be following up on this, but please beware of this company in the meantime

6

7

8    A true and correct printout of that complaint is attached as Exhibit 8.

9    **Cancelling my subscription seems impossible (June 4, 2019).** Consumers beware. I have requested a cancellation for my Consumer Reports subscription twice via their website no success.

10

11    Despite my cancellation request confirmations, they have still renewed my membership for the past two years without my consent.

12

13    I recently tried to email customer care from the link on their website and the link does not work. I am very concerned about the business practices of this company and would not recommend anyone to sign up for their magazine or services.

14

15    A true and correct printout of that complaint is attached as Exhibit 9.

16    **Levie (July 8, 2019).** For over two years now I have tried to cancel my consumer reports subscription. Then June/July comes and they bill me again.

17

18    I call them each year within a few days after receiving the bill and demand a full refund and tell them to permanently cancel my subscription. This year they had the nerve to tell me they can't keep giving me a refund each year! I demanded to speak to a supervisor, then they agreed to a full refund. I once again asked them to permanently cancel my subscription.

19

20

21    I also this year put a permanent stop for consumer reports with my credit card company. It is ironic the publication we looked up to for protection of consumer rights, abuses consumer rights so blatantly.

22

23    A true and correct printout of that complaint is attached as Exhibit 10.

24    **CLASS ACTION ALLEGATIONS**

25      28.    Plaintiffs bring this lawsuit as class action under Code of Civil Procedure § 382 on

26 behalf of the following Class: "All individuals in California who, within the applicable limitations

27 period, were enrolled by Defendants in an automatic renewal or continuous service program.

28 Excluded from the Class are all employees of Defendants, all employees of Plaintiffs' counsel, and

9

CLASS ACTION COMPLAINT      13

1  the judicial officers to whom this case is assigned."

2      29.    Ascertainability. The members of the Class may be ascertained by reviewing records

3  in the possession of Defendants and/or third parties, including without limitation Defendants'

4  marketing and promotion records, customer records, and billing records.

5      30.    Common Questions of Fact or Law.  There are questions of fact or law that are

6  common to the members of the Class, which predominate over individual issues.   Common

7  questions regarding the Class include, without limitation: (1) Whether Defendants present the

8  required automatic renewal offer terms in a manner that is "clear and conspicuous" within the

9  meaning of California law and in "visual proximity" to a request for consent to the offer (or in the

10 case of an offer conveyed by voice, in temporal proximity to a request for consent to the offer);

11 (2) Defendants' policies, practices, and procedures for obtaining affirmative consent from

12 customers before charging a credit card, debit card, or third-party payment account; (3) whether

13 Defendants provide consumers with an acknowledgment that includes "clear and conspicuous"

14 disclosure of all automatic renewal offer terms, the cancellation policy, and information regarding

15 how to cancel; (4) Defendants' record-keeping practices; and (5) the appropriate remedies for

16 Defendants' conduct.

17     31.    Numerosity. The Class is so numerous that joinder of all Class members would be

18 impracticable.  Plaintiffs are informed and believe and thereon allege that the Class consists of at

19 least 100 members.

20     32.    Typicality and Adequacy.  Plaintiffs' claims are typical of the claims of the Class

21 members.  Plaintiffs allege on information and belief that Defendants enrolled Plaintiffs and Class

22 members in automatic renewal or continuous service programs without disclosing all automatic

23 renewal offer terms required by law, and without presenting such terms in the requisite "clear and

24 conspicuous" manner; charged Class members' credit cards, debit cards, or third-party accounts

25 without first obtaining Class members' affirmative consent to an agreement containing clear and

26 conspicuous disclosure of all automatic renewal offer terms in the manner required by California

27 law; and failed to provide the requisite acknowledgment with the required disclosures and

28 information.  Plaintiffs have no interests that are adverse to those of the other Class members.

10

1   Plaintiffs will fairly and adequately protect the interests of the Class members.

2       33.    Superiority.   A class action is superior to other methods for resolving this

3   controversy. Because the amount of restitution to which each Class member may be entitled is low

4   in comparison to the expense and burden of individual litigation, it would be impracticable for Class

5   members to redress the wrongs done to them without a class action forum.   Furthermore, on

6   information and belief, Class members do not know that their legal rights have been violated. Class

7   certification would also conserve judicial resources and avoid the possibility of inconsistent

8   judgments.

9       34.    Defendants Have Acted on Grounds Generally Applicable to the Class.   Defendants

10  have acted on grounds that are generally applicable to the Class, thereby making appropriate final

11  injunctive relief and/or declaratory relief with respect to the Class as a whole.

12                          **FIRST CAUSE OF ACTION**

13              False Advertising -- Violation of the Automatic Renewal Law

14      35.    Plaintiffs incorporate the previous allegations as though set forth herein.

15      36.    Plaintiffs are informed and believe and thereon allege that, during the applicable

16  statute of limitations period, Defendants have enrolled consumers, including Plaintiffs and Class

17  members, in automatic renewal programs and/or continuous service programs and have (a) failed to

18  present the automatic renewal or continuous service offer in a clear and conspicuous manner before

19  the subscription or purchasing agreeing is fulfilled and in visual proximity, or in the case of an offer

20  conveyed by voice, in temporal proximity, to the request for consent to the offer; (b) charged the

21  consumer's credit or debit card or the consumer's third-party payment account for an automatic

22  renewal or continuous service without first obtaining the consumer's affirmative consent to an

23  agreement containing clear and conspicuous disclosure of the automatic renewal or continuous

24  service offer terms; and (c) failed to provide an acknowledgment that includes clear and conspicuous

25  disclosure of all automatic renewal or continuous service offer terms, the cancellation policy, and

26  information regarding how to cancel.

27      37.    Plaintiffs have suffered injury in fact and lost money as a result of Defendants'

28  business practices alleged herein.

11

CLASS ACTION COMPLAINT                15

38.     Pursuant to Bus. & Prof. Code §§ 17603 and 17535, Plaintiffs and Class members are entitled to restitution of all amounts that Defendants charged to Plaintiffs' and Class members' credit cards, debit cards, or third-party payment accounts during the four years preceding the filing of this Complaint and continuing until Defendants' statutory violations cease.

39.     Pursuant to Bus. & Prof. Code § 17535, Plaintiffs and Class members are entitled to an injunction enjoining Defendants from making automatic renewal or continuous service offers to California consumers that do not comply in all respects with California law, and enjoining Defendants from charging California consumers' credit cards, debit cards, and/or third party payment accounts until such time as Defendants obtain the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosure of all automatic renewal or continuous service offer terms.

## SECOND CAUSE OF ACTION

### Violation of the Consumers Legal Remedies Act

40.     Plaintiffs incorporate the allegations of paragraphs 1-34 as though set forth herein.

41.     Plaintiffs and the Class members are "consumers" within the meaning of Civil Code § 1761(d) in that Plaintiffs and the goods and/or services sought or acquired were for personal, family, or household purposes.

42.     Defendants' magazine offers and the magazines pertaining thereto are "goods" and/or "services" within the meaning of Civil Code § 1761(a) and (b).

43.     The purchases and payments by Plaintiffs and Class members are "transactions" within the meaning of Civil Code § 1761(e).

44.     Defendants have violated Civil Code § 1770, subdivisions (a)(5), (a)(9), (a)(13), (a)(14), and (a)(17), by representing that Defendants' goods and services have certain characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; making false and misleading statements of fact concerning the reasons for, existence of and amounts of price reductions; representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and by representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit

12

1   is contingent on an event to occur subsequent to the consummation of the transaction.

2       45.    On behalf of themselves, all Class members, and the general public of the State of

3   California, Plaintiffs seek an injunction prohibiting Defendants from continuing their unlawful

4   practices in violation of the Consumers Legal Remedies Act, as described above.

5                         **THIRD CAUSE OF ACTION**

6                  Violation of the California Unfair Competition Law

7       46.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

8       47.    The California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*,

9   defines unfair competition as including any unlawful, unfair or fraudulent business act or practice

10   and unfair, deceptive, untrue, or misleading advertising.

11       48.    In the course of conducting business within the applicable limitations period,

12   Defendants committed "unlawful," "unfair," and/or "fraudulent" business practices, and engaged in

13   conduct that constitutes unfair, deceptive, untrue, or misleading advertising, by *inter alia* and

14   without limitation: (a) failing to present the terms of automatic renewal or continuous service offers

15   in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in

16   visual proximity (or in the case of an offer conveyed by voice, in temporal proximity), to a request

17   for consent to the offer, in violation of Bus. & Prof. Code § 17602(a)(l); (b) charging the consumer's

18   credit card, debit card, or third-party payment account for an automatic renewal or continuous

19   service without first obtaining the consumer's affirmative consent to an agreement containing clear

20   and conspicuous disclosures of automatic renewal offer terms or continuous service offer terms, in

21   violation of Bus. & Prof. Code § 17602(a)(2); (c) failing to provide an acknowledgment that

22   includes clear and conspicuous disclosure of automatic renewal or continuous service offer terms,

23   cancellation policy, and information regarding how to cancel, in violation of Bus. & Prof. Code

24   § 17602(a)(3); (d) representing that Defendants' goods and services have certain characteristics that

25   they do not have, in violation of Civil Code § 1770(a)(5); (e) advertising goods and services with

26   the intent not to sell them as advertised, in violation of Civil Code § 1770(a)(9); (f) making false

27   and misleading statements of fact concerning the reasons for, existence of and amounts of price

28   reductions, in violation of Civil Code § 1770(a)(13); (g) representing that a transaction confers or

1  involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by

2  law, in violation of Civil Code § 1770 (a)(14); and (h) representing that the consumer will receive a

3  rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to

4  occur subsequent to the consummation of the transaction, in violation of Civil Code § 1770(a)(17).

5  Plaintiffs reserve the right to allege other violations of law that constitute unlawful or unfair business

6  acts or practices.

7      49.    Defendants' acts and omissions as alleged herein violate obligations imposed by

8  statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical,

9  oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits

10  attributable to such conduct.

11      50.    There were reasonably available alternatives to further Defendants' legitimate

12  business interests, other than the conduct described herein.

13      51.    Defendants' acts, omissions, nondisclosures, and misleading statements as alleged

14  herein were and are false, misleading, and/or likely to deceive the consuming public.

15      52.    Plaintiffs have suffered injury in fact and lost money as a result of Defendants' acts

16  of unfair competition.

17      53.    Pursuant to Bus. & Prof. Code § 17203, Plaintiffs and the Class members are entitled

18  to an order: (1) requiring Defendants to make restitution to Plaintiffs and Class members;

19  (2) enjoining Defendants from making automatic renewal or continuous service offers in the State

20  of California that do not comply in all respects with the California law; and (3) enjoining Defendants

21  from charging California consumers' credit cards, debit cards, and/or third party payment accounts

22  until such time as Defendants obtain the consumer's affirmative consent to an agreement that

23  contains clear and conspicuous disclosure of all automatic renewal or continuous service offer terms.

24      54.    Plaintiffs reserve the right to seek other prohibitory or mandatory aspects of

25  injunctive relief, whether on behalf of the Class and/or for the benefit of the general public of the

26  State of California, to prevent Defendants' use or employment of practices that constitute unfair

27  competition.

28

14

CLASS ACTION COMPLAINT

**FOURTH CAUSE OF ACTION**

Unjust Enrichment

55.   Plaintiffs incorporate the previous allegations as though fully set forth herein.

56.   Defendants have received money from Plaintiffs and Class members in connection with Defendants' conduct in violation of California law.  Defendants would be unjustly enriched if they were permitted to retain those funds, and Defendants should be ordered to restore said funds to Plaintiffs and the class members.

57.   Plaintiffs allege this unjust enrichment claim in the alternative to relief provided under any legal claim alleged herein.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

On the First Cause of Action:

1.   For restitution;

2.   For an order that all goods sent to Class members are unconditional gifts;

3.   For a public injunction for the benefit of the People of the State of California;

On the Second Cause of Action:

4.   For a public injunction for the benefit of the People of the State of California;

5.   For an award of attorneys' fees pursuant to Civil Code § 1780(d);

On the Third Cause of Action:

6.   For restitution;

7.   For a public injunction for the benefit of the People of the State of California;

On the Fourth Cause of Action:

8.   For restitution;

/ / /

/ / /

/ / /

/ / /

/ / /

15

1  <u>On All Causes of Action:</u>

2  9.    For an award of attorneys' fees pursuant to Code Civ. Proc. § 1021.5;

3  10.   For costs of suit;

4  11.   For pre-judgment interest; and

5  12.   For such other relief that the Court deems just and proper.

6  DATED:  March 2, 2020              DOSTART HANNINK& COVENEY LLP

7

8  _____
   ZACH P. DOSTART

9  Attorneys for Plaintiffs

10

11             <u>**DEMAND FOR JURY TRIAL**</u>

12  Plaintiffs hereby demand a trial by jury of all claims and causes of action so triable.

13  DATED:  March 2, 2020             DOSTART HANNINK & COVENEY LLP

14

15  _____
   ZACH P. DOSTART

16  Attorneys for Plaintiffs

17

18  906455.4

19

20

21

22

23

24

25

26

27

28

16

CLASS ACTION COMPLAINT

Exhibit 1

**SENATE JUDICIARY COMMITTEE**
**Senator Ellen M. Corbett, Chair**
**2009-2010 Regular Session**

SB 340
Senator Yee
As Amended April 2, 2009
Hearing Date: April 14, 2009
Business and Professions Code
ADM:jd

## SUBJECT

Advertising: Automatic Renewal Purchases

## DESCRIPTION

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis. This bill would also require all marketing materials to clearly and conspicuously display a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism the customer could use for cancellation.

This bill would require the order form to clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement.

This bill would impose similar requirements for any automatic renewal offer made over the telephone or on an Internet Web page.

(This analysis reflects author's amendments to be offered in committee.)

## BACKGROUND

Current consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements. Senate Bill 340 is intended to close this gap in the law.

When some businesses began using automatic renewals for subscriptions and purchase agreements for products and services, consumer complaints began to surface regarding those automatic renewals. Consumers complained that they were unaware of and had

LEGISLATIVE INTENT SERVICE   (800) 666-1917

(more)   Exhibit 1
Page 1

SB 340 (Yee)
Page 2 of 7

not requested the automatic renewals until they either received a bill or a charge on their credit card.

An example of this problem is illustrated by the Time, Inc. (Time) case. After receiving numerous consumer complaints, the Attorneys General of 23 states, including California, launched an investigation into Time's automatic renewal subscription offers. In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that includes a number of reforms to automatic renewals that Time sends to their customers. Those reforms include, among others, expanded disclosure requirements and customers' affirmative consent to automatic renewals. (*See* Comment 2 for details.)

## CHANGES TO EXISTING LAW

Existing law, the Unfair Competition Law (UCL), provides that unfair competition means and includes any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising, and any act prohibited by the False Advertising Act (FAA). (Bus. & Prof. Code Sec. 17200 et seq.)

Existing law, the FAA, includes the following:
- prohibits any person with the intent, directly or indirectly, to dispose of real or personal property, to perform services, or to make or disseminate or cause to be made or disseminated to the public any statement concerning that real or personal property that is untrue or misleading and known or should be known to be untrue or misleading; and
- prohibits any person from making or disseminating any untrue or misleading statement as part of a plan or scheme with the intent not to sell that personal property or those services at the stated or advertised price. (Bus. & Prof. Code Sec. 17500.)

Existing law provides that any violation of the FAA is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine of $2,500, or by both. (Bus. & Prof. Secs. 17500, 17534.)

Existing law provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Bus. & Prof. Code Sec. 17536.)

Existing law provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief. (Bus. & Prof. Code Sec. 17204.)

Existing law provides for injunctive relief, restitution, disgorgement, and civil penalties. (Bus. & Prof. Code Secs. 17203, 17206.)



(800) 666-1917   LEGISLATIVE INTENT SERVICE

Exhibit 1
Page 2

SB 340 (Yee)
Page 3 of 7

This bill would require all printed marketing materials containing an offer with an automatic renewal term to comply with the following: the customer's agreement to the automatic renewal offer must be obtained in accordance with either (1) or (2) below so that the customer is given the opportunity to expressly consent to the offer:

1.　　　　All automatic renewal offer terms must appear on the order form in immediate proximity to the area on the form where the customer selects the subscription or purchasing agreement billing terms or where the subscription or purchasing agreement billing terms are described; the order form must clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement; and the automatic renewal offer terms must appear on materials that can be retained by the customer.

2.　　　　Both of the following:
a. on the front of the order form, the marketing materials must (i) refer to the subscription or purchasing agreement using the term "automatic renewal" or "continuous renewal," (ii) clearly and conspicuously state that the customer is agreeing to the automatic renewal, and (iii) specify where the full terms of the automatic renewal offer may be found; and
b. the marketing materials must clearly and conspicuously state the automatic renewal offer terms presented together preceded by a title identifying them specifically as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or "Continuous Renewal Service Terms," or other similar description.

This bill would require all marketing materials that offer an automatic renewal, when viewed as a whole, to clearly and conspicuously disclose the material terms of the automatic renewal offer and must not misrepresent the material terms of the offer.

This bill would require an automatic renewal to clearly and conspicuously describe the cancellation policy and how to cancel, including, but not limited to, a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism on the Internet Web page or on the publication page of the printed materials.

This bill would require, in any automatic renewal offer made over the telephone, a business to clearly and conspicuously state the automatic renewal terms prior to obtaining a customer's consent and payment information. The business must obtain a clear affirmative statement from the customer agreeing to the automatic renewal offer terms and must send a written acknowledgement that contains the toll-free number, if available, telephone number, postal address, or electronic mechanism for cancellation.

This bill would require, in any automatic renewal offer made on an Internet Web page, the business to clearly and conspicuously disclose the automatic renewal offer terms prior to the button or icon on which the customer must click to submit the order. In any automatic renewal offer made on an Internet Web page where the automatic renewal terms do not appear immediately above the submit button, the customer must be required to affirmatively consent to the automatic renewal offer terms. The automatic



(800) 666-1917　　LEGISLATIVE INTENT SERVICE

SB 340 (Yee)
Page 4 of 7

renewal terms must be preceded by a title identifying them as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," "Continuous Renewal Service Terms," or other similar description.

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis and all marketing materials that offer an automatic renewal subscription or purchasing agreement must clearly and conspicuously display the cancellation policy and how to cancel.

This bill would provide that no business may represent that a product is "free" if the cost of the product is incorporated in the price of the accompanying item purchased under automatic renewal conditions.

This bill would provide that a violation of the bill's provisions would not be a crime, but all applicable civil remedies would be available.

This bill would define key terms, including "automatic renewal" and "automatic renewal terms." (*See* Comment 4.)

**COMMENT**

1. Stated need for the bill

The author writes:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to. The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

> A widespread instance of these violations resulted in the 2006 Time, Inc. case, in which Time settled a multi-state investigation into its automatic renewal offers and solicitations. The states launched their probe after receiving complaints from consumers that Time was billing them or charging their credit cards for unwanted magazine subscriptions. The states' investigation found that these mail solicitations misled some consumers into paying for unwanted or unordered subscriptions.



(800) 666-1917

LEGISLATIVE INTENT SERVICE

Exhibit 1
Page 4

SB 340 (Yee)
Page 5 of 7

2. <u>Time's Assurance of Voluntary Compliance or Discontinuance (Assurance) with Attorneys General: SB 340 modeled after the Assurance</u>

The Attorneys General of 23 states (States), including California, investigated Time's automatic renewal subscription offers. Time publishes over 150 magazines worldwide, including Time, People, Sports Illustrated, This Old House, Entertainment Weekly, Fortune, and Popular Science. Time required customers to notify it if they did not want a subscription renewal; otherwise Time charged customers' credit cards or billed customers. The automatic renewal terms replaced "the industry's prior practice of offering limited-term subscriptions that were renewed at the Customer's affirmative election." The States investigated:

> [W]hether the [automatic renewal] terms were clearly and adequately disclosed; whether the Customer was given an opportunity to expressly consent to the offer; whether the Customer was likely to believe the purchase was for a limited-term subscription, rather than an automatically renewed subscription; whether Customers were subsequently informed of the activation of an Automatic Renewal, and, if so, the manner in which they were so informed; the manner by which Customers were billed or charged; and how Time sought to collect payments for charges resulting from an Automatic Renewal. (Matters Investigated set forth in the Assurance.)

As a result of the investigation, in 2006, the States reached a settlement agreement – the Assurance – with Time. In the Assurance, Time agreed to:
- provide clear and conspicuous disclosures to consumers concerning all the material terms for automatic subscription renewals and, for the next five years, provide consumers the option to affirmatively choose an automatic renewal option and Time will send those consumers who have chosen an automatic subscription renewal written reminders, including information on the right and procedure to cancel;
- honor all requests to cancel subscriptions as soon as reasonably possible and to provide refunds to consumers charged for magazines they did not order;
- stop mailing solicitations to consumers for subscriptions that resemble bills, invoices, or statements of amounts due; and
- not submit unpaid accounts of automatic renewal customers for third party collection.

Time also agreed to refund to customers up to $4.3 million, which included up to $828,463 to 20,238 eligible California consumers, approximately $41 per consumer. Senate Bill 340 is modeled in large part after the Assurance.

3. <u>Remedies available under the bill</u>

Senate Bill 340 would provide that a violation of its provisions would not be a crime, but all applicable civil remedies would be available.



(800) 666-1917

LEGISLATIVE INTENT SERVICE

Exhibit 1
Page 5

SB 340 (Yee)
Page 6 of 7

Under the FAA, any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney.  Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party. However, the party must have suffered injury in fact and lost money or property.

4.  Key terms defined

This bill would define the following key terms:
a.  "Automatic renewal" would mean a plan or agreement in which a subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term.
b.  "Automatic renewal offer terms" would mean the following clear and conspicuous disclosure:
- that the subscription or purchasing agreement will continue unless the customer notifies the business to stop;
- that the customer has the right to cancel;
- that the customer will be billed, credit card charged, or other appropriate description of the payment method depending on the method described to the customer, or chosen by the customer on the front of the order form, and that the bill, charge, or other payment method will take place before the start of each new automatic renewal term;
- the length of the automatic renewal term or that the renewal is continuous, unless the length of the term is chosen by the customer;
- that the price paid by the customer for future automatic renewal terms may change; and
- the minimum purchase obligation, if any.
c.  "Clear and conspicuous" or "clearly and conspicuously" would mean a statement or  communication, written or oral, presented in a font, size color, location, and contrast against the background in which it appears, compared to the other matter which is presented, so that it is readily understandable, noticeable, and readable.
d.  "Marketing materials" would include any offer, solicitation, script, product description, publication, or other promotional materials, renewal notice, purchase order device, fulfillment material, or any agreement for the sale or trial viewing of products that are delivered by mail, in person, television or radio broadcast, e-mail, Internet, Internet Web page, or telephone device, or appearing in any newspaper or magazine or on any insert thereto, or Internet link or pop-up window.

5.  Recording of telephone automatic renewal offers

Assembly Bill 88 (Corbett, Ch. 77, Stats. 2003) incorporated into state law a rule adopted by the Federal Trade Commission intended to protect consumers from "abusive" telemarketing practices.  The rule requires, among other things, that telemarketers make

LEGISLATIVE INTENT SERVICE     (800) 666-1917

SB 340 (Yee)
Page 7 of 7

and maintain an audio recording of all telephone solicitations. (Telemarketing Sales Rule, 16 C.F.R. Part 310, 310.4(a)(6)(i), and 310.5(a)(5), effective March 31, 2009.)

The author may want to consider requiring that telephone automatic renewal offers be audio recorded and that the recording be maintained.

6. <u>Author's amendments</u>

On page 3, line 17, insert:
(c) "Continuous renewal" means a plan or arrangement in which a subscription or purchasing agreement is continuously renewed until the customer cancels the renewal.

On page 3, line 19, delete (c) and insert (d).

On page 3, line 34, delete (d) and insert (e).

On page 3, line 36, delete (e) and insert (f).

On page 4, line 4, insert (f).

On page 4, line 5, insert:
(g) All automatic renewal provisions in this article shall apply to continuous renewals.


<u>Support</u>: California Public Interest Research Group; Consumer Federation of California; American Federation of State, County and Municipal Employees; California Alliance for Consumer Protection

<u>Opposition</u>: None Known

**HISTORY**

<u>Source</u>: Author

<u>Related Pending Legislation</u>: None Known

<u>Prior Legislation</u>: None Known

***********

LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 2

Date of Hearing: June 30, 2009

ASSEMBLY COMMITTEE ON JUDICIARY
Mike Feuer, Chair
SB 340 (Yee) – As Amended: June 24, 2009

PROPOSED CONSENT (As Proposed to be Amended)

SENATE VOTE: 37-0

SUBJECT: AUTOMATIC RENEWAL AND CONTINUOUS SERVICE OFFERS

KEY ISSUE: SHOULD A BUSINESS THAT MARKETS A PRODUCT WITH AN
"AUTOMATIC RENEWAL OFFER" BE REQUIRED TO CLEARLY AND
CONSPICUOUSLY DISCLOSE RENEWAL TERMS AND CANCELLATION POLICIES,
AND TO OBTAIN THE CUSTOMER'S AFFIRMATIVE CONSENT TO AN AUTOMATIC
RENEWAL?

FISCAL EFFECT: As currently in print this bill is keyed non-fiscal.

**SYNOPSIS**

*This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to
protect consumers from unwittingly consenting to "automatic renewals" of subscription orders
or other "continuous service" offers. According to the author and supporters, consumers are
often charged for renewal purchases without their consent or knowledge. For example,
consumers sometimes find that a magazine subscription renewal appears on a credit card
statement even though they never agreed to a renewal. Indeed, this problem led 23 state
attorneys general to launch an investigation of Time, Inc., in response to claims that the
company used deceptive practices in signing up customers for automatic subscription renewals.
As part of a settlement of this dispute, Time agreed to institute new practices so that customers
are fully aware of and affirmatively consent to automatic renewals. This bill, following the lead
of the Times' settlement, would require that renewal terms and cancellation policies be clearly
and conspicuously presented to the consumer, whether the offer is made on printed material or
through a telephone solicitation. In addition, the bill would require that the consumer make
some affirmative acknowledgement before an order with an automatic renewal can be
completed. Finally, the bill specifies that violation of the bill's provisions do not constitute a
crime. The author has worked closely with affected business interests and has made several
amendments that appear to address all stakeholders' concerns. There is no registered
opposition to the bill.*

SUMMARY: Requires any business making an "automatic renewal" or "continuous service"
offer to clearly and conspicuously, as defined, disclose terms of the offer and obtain the
consumer's affirmative consent to the offer. Specifically, this bill:

1) Makes it unlawful for any business making an automatic renewal offer or a continuous
   service offer to a consumer to do any of the following:

(800) 666-1917   LEGISLATIVE INTENT SERVICE

Exhibit 2
Page 8

   a) Fail to present the offer terms in a clear and conspicuous manner, as defined, before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

   b) Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service offer without first obtaining the consumer's affirmative consent.

   c) Fail to provide automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the business shall disclose how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

2) Requires a business making automatic renewal or continuous service offers to provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the customer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the written acknowledgment.

3) Specifies that in the case of a material change in the terms of an automatic renewal or continuous service offer that has been accepted by the consumer, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer.

4) Specifies that the requirements of this bill shall only apply to the completion of the initial order for the automatic renewal or continuous service, except as provided.

5) Provides that in any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service or automatic renewal, without first obtaining the consumer's affirmative consent, in the manner required by this bill, then the goods, wares, merchandise, or products shall be deemed an unconditional gift to the consumer, and the business shall bear any shipping or other related costs.

6) Provides that violation of the provisions of this bill shall not be a crime, but that all civil remedies that apply to a violation may be employed. Specifies, however, that if a business complies with the provisions of this bill in good faith, it shall not be subject to civil remedies.

7) Exempts from the provisions of this bill any service provided by certain businesses or entities, including those regulated by the California Public Utilities Commission, the Federal Communication Commission, or the Federal Energy Regulatory Commission.

<u>EXISTING LAW:</u>

1) Provides, under the Unfair Competition Law (UCL), that unfair competition includes any unlawful, unfair, or fraudulent business act or practice, including any unfair, deceptive, or untrue advertising, or any act prohibited by the False Advertising Act (FAA). (Business & Professions Code Section 17200 *et seq.*)

2) Prohibits any person with the intent, directly or indirectly, to sell any goods or services by making or disseminating statements that the person knows, or should know, to be untrue or misleading, and prohibits any person from making or disseminating any untrue or misleading

LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 2
Page 9

statement as part of a plan or scheme to sell goods or services at other than the stated or advertised price.  (Business & Professions Code section 17500.)

3) Provides that any violation of the FAA is a misdemeanor.  (Business & Professions Code sections 17500, 17534.)

4) Provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Business & Professions Code section 17536.)

5) Provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief.  (Business & Professions Code section 17204.)

6) Provides for injunctive relief, restitution, disgorgement, and civil penalties for FAA violations.  (Business & Professions Code sections 17203, 17206.)

COMMENTS:  This non-controversial bill is a response to reported consumer complaints that certain businesses, especially those offering magazine subscriptions or other potentially continuous services, lure customers into signing up for "automatic renewals" without the consumer's full knowledge or consent.  This bill seeks to address this problem by requiring clear disclosures and affirmative acts of customer consent.  The author states:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

As noted in the author's background material, this bill was prompted in part by an investigation brought by the attorneys general of 23 states, including California, against Time, Inc.  The investigations found that subscribers to several magazines published by Time, Inc. were discovering that their subscriptions were automatically renewed even though the customers claimed that they had never knowingly consented to the renewals.  In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that requires Time to more clearly disclose renewal terms and ensure that the consumer take some affirmative step to acknowledge consent or rejection of the automatic renewal offer.  According to the author, the specific disclosure and consent requirements in this measure are modeled after, though not identical to, those set forth in the Time settlement.

ARGUMENTS IN SUPPORT:  According to the California Public Interest Research Group (CALPIRG), "this bill will help ensure that consumers only get into an ongoing subscription if they want to."  According to the Consumer Federation of California, this measure will curb deceptive marketing practices that are used to sell everything from magazine subscriptions to "free trial" offers that lock consumers into an ongoing purchase agreement.  Supporters generally

(800) 666-1917

LEGISLATIVE INTENT SERVICE

Exhibit 2
Page 10

contend that this is a straightforward measure reflecting the basic premise that consumers deserve to know the terms and conditions to which they are agreeing.

<u>Author's Technical Amendments</u>:  The author wishes to take the following technical and clarifying amendments:

- On page 4 after line 9 insert:

*(e) "Consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.*

- On page 4 line 32 and on page line 16 change "customer" to "consumer"

<u>PRIOR LEGISLATION</u>:  AB 88 (Chapter 77, Stats. of 2003) provides that a contract for a good or service that is made in connection with a telephone solicitation is unlawful if the telemarketer is in violation of a recent Federal Trade Commission (FTC) rule requiring that the seller obtain specified information and express consent directly from the consumer and, under certain circumstances, maintain a recording of the call.  (This present bill would similarly require that automatic renewal offers made over the telephone comply with federal telephonic marketing regulations.)

<u>REGISTERED SUPPORT/OPPOSITION</u>:

<u>Support</u>:

California Alliance for Consumer Protection
California Public Interest Research Group (CALPIRG)
Consumer Federation of California

<u>Opposition</u>:

None on file

<u>Analysis Prepared by</u>:  Thomas Clark / JUD. / (916) 319-2334

(800) 666-1917    LEGISLATIVE INTENT SERVICE

Exhibit 2
Page 11

Exhibit 3

**12:07** ◀ CR Ratings

AA   🔒 secure.consumerreports.org   ↻

## CR Consumer Reports

### Digital Membership         $39.00 / year

**STEP 2 OF 3**

## Select a Payment Method





  Secure Checkout

**Need Help?**

Privacy Policy    User Agreement    Ad Choices

© 2006 – 2020 Consumer Reports

Exhibit 3
Page 12

35

**12:07**

◀ CR Ratings

**AA**   🔒 secure.consumerreports.org   ↻

**CR** Consumer Reports

---

**Digital Membership**   $39.00 / year

**STEP 3 OF 3**

## Billing Address

| First Name | Last Name |
|---|---|

Street Address

| Zip Code | State ⌄ |
|---|---|

City

United States ⌄

## Payment Information

MasterCard   VISA   [AMEX]   DISCOVER

enter number

‹   ⬆   📖   ⧉

Exhibit 3
Page 13

36



**12:08** ◀ CR Ratings

🔒 **secure.consumerreports.org**

United States ⌄

## Payment Information

enter number

| 01 ⌄ | 2020 ⌄ | enter CVC |

What's this?

⁺By clicking Place My Order, you authorize us to charge your payment method at the above rate plus applicable sales tax and automatically renew at the rate and term then in effect. You can cancel at any time by going to ConsumerReports.org/myaccount or calling 1-800-333-0663*. You also accept the terms of the User Agreement and Privacy Policy.



**Place My Order**


🔒 Secure Checkout

Need Help?

Privacy Policy    User Agreement    Ad Choices

© 2006 - 2020 Consumer Reports

Exhibit 3
Page 14

Exhibit 4

**From:** "Customer Service" <mail@cro.consumer.org>
**To:** '[Redacted]@att.net' <[Redacted]@att.net>
**Sent:** Mon, Oct 8, 2018 at 5:01 PM
**Subject:** Welcome to Consumer Reports!

# Welcome to Consumer Reports!

**Dear Nino,**

Congratulations! Your All Access membership to Consumer Reports is now active. Get started right now with access to our unbiased ratings and reviews, Ask CR and other membership benefits.

Go to My CR

## For your Records

**Bill to:**
Nino Koller
[Redacted]
[Redacted]
United States

**Email/Username:** [Redacted]@att.net

**Order Number:** 103808758

**Order Date:** 10/08/2018

**Start Date:** 10/08/2018

**End Date:** 10/07/2019

**Card Type:** Visa

**Card Number:** [Redacted]

**Membership type:** Annual All Access Membership
(Confirmation of authorized renewal at then current rate)
**Price: $ 55.00**
**Total: $ 55.00**

*You'll need your email/username to sign into your membership account on consumerreports.org, so please keep this e-mail somewhere handy for later reference. For your privacy, we did not include your password in this e-mail. NOTE: Passwords are case sensitive.*

Thanks again for becoming a member of Consumer Reports!
Regards,
Sue Melfi
Director of Member Services
P.S. Sign up for our email newsletters to get the latest info sent right to your inbox!

Please note: This email was sent from an automated address that cannot reply to incoming email, including member services inquiries. For support and to contact Member Services, go here.

Copyright © 2006-2018 Consumer Reports  No reproduction, in whole or in part, without written permission.

Exhibit 4
Page 15

Exhibit 5



**Shonya of Penn Valley, CA**
✓ Verified Reviewer

Original review: Oct. 25, 2019

They auto renewed my membership which I absolutely remember not authorizing when I joined last year. I called them the very day they charged me for an additional year within minutes of the email coming through. While they cancelled my membership, they would not refund the total amount. Even though it had been 10 minutes, they charged me for a whole month. Crooks! I will never join again, they are totally dishonest.

Exhibit 5
Page 16

Exhibit 6



**Kimberly of Huntington Beach, CA**
✓ Verified Reviewer

Original review: Oct. 15, 2018

Consumer Reports charged my credit card (October 2018) after canceling this account almost 10 years ago. The customer service rep said "after you cancel auto renew, you need to cancel every year so you don't get charged"! What?! I have to call every year AFTER I cancel the account? This is fraudulent and I plan to investigate this further. They should not be able to get away with charging canceled decade-old accounts! All of the information they provide is online for FREE through customer reviews. They're obviously hurting for cash and trying to find ways to stay around. Not cool!

Exhibit 6
Page 17

Exhibit 7



**Lucinda of Thousand Oaks, CA**
✓ Verified Reviewer

Original review: April 23, 2015

Years ago I enrolled in CR for what I thought was a year. Every year I attempt to be discontinued from their billing access to my credit card but these guys have become as corrupt as those they deemed to protect American population from.

Exhibit 7
Page 18

Exhibit 8

2/25/2020                    Consumer Reports Subscription Review from San Jacinto, California Jun 28, 2016 @ Pissed Consumer

San Jacinto, California      Jun 28, 2016                               NOT RESOLVED

## 2.0  Details                                                0 comments

I am thoroughly discussed with Consumer's Report! I had gone online last month and cancelled my upcoming renewal scheduled for this month.

Related: Reoccurring monthly charge - Consumer Reports

Unbeknownst to me, they automatically debited $30.00 from my account this morning! When I called the company they said that they had never received my cancellation.

It should be a law that ANY automatic debits should be prefaced with an email alert atleast 72 hours before, a my very credible Geico insurance company does on a monthly basis. I will most definitely be following up on this, but please beware of this company in the meantime

Product or Service Mentioned: Consumer Reports Subscription.

Reason of review: Return, Exchange or Cancellation Policy.

Exhibit 8
Page 19

Exhibit 9

2/25/2020                    Consumer Reports - Cancelling my subscription seems impossible Jul 08, 2019 @ Pissed Consumer

Jun 04, 2019                                          

## 1.0  Details                                         2 comments

Consumers beware. I have requested a cancellation for my Consumer Reports
subscription twice via their website no success.

  Related: Customer support - Consumer Reports

Despite my cancellation request confirmations, they have still renewed my
membership for the past two years without my consent.

I recently tried to email customer care from the link on their website and the link
does not work. I am very concerned about the business practices of this company
and would not recommend anyone to sign up for their magazine or services.

Product or Service Mentioned: Consumer Reports Subscription.

Reason of review: Return, Exchange or Cancellation Policy.

Consumer Reports Pros: Magazine and articles.

Consumer Reports Cons: Renew my subscription each year despite requests to
cancel, Auto renew and non responsiveness, Deceptive auto renew practices,
Unable to contact customer care.

RIP OFF SUBSCRIPTION

Exhibit 9
Page 20

Exhibit 10

Levie    Jul 08, 2019    #1713637

For over two years now I have tried to cancel my consumer reports subscription. Then June/July comes and they bill me again.

I call them each year within a few days after receiving the bill and demand a full refund and tell them to permanently cancel my subscription. This year they had the nerve to tell me they can't keep giving me a refund each year! I demanded to speak to a supervisor, then they agreed to a full refund. I once again asked them to permanently cancel my subscription.

I also this year put a permanent stop for consumer reports with my credit card company. It is ironic the publication we looked up to for protection of consumer rights, abuses consumer rights so blatantly.

Exhibit 10
Page 21

# EXHIBIT B

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| James T. Hannink (131747)<br>Zach P. Dostart (255071)<br>DOSTART HANNINK & COVENEY LLP<br>4180 La Jolla Village Drive, Suite 530, La Jolla, CA 92037<br>TELEPHONE NO.: (858) 623-4200   FAX NO.: (858) 623-4299<br>ATTORNEY FOR *(Name):* Plaintiffs Nino Koller and Michelle Brown | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**03/02/2020** at 12:02:01 PM<br><br>Clerk of the Superior Court<br>By Iris Tellez, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
STREET ADDRESS: **330 W. Broadway**
MAILING ADDRESS:
CITY AND ZIP CODE: **San Diego  92101**
BRANCH NAME: **Hall of Justice**

CASE NAME:
**Koller, et al. v. Consumer Reports, Inc.**

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>**37-2020-00011819-CU-BT-CTL** |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | DEPT: | JUDGE: **Judge Ronald L. Styn** |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):* 1. Violation of ARL; 2. Violation of CLRA; 3. Unfair Competition; and 4. Unjust Enrichment.
5. This case [✓] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 2, 2020

Zach P. Dostart
(TYPE OR PRINT NAME)                                    ► *[signature]* (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

# EXHIBIT C

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY *(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CONSUMER REPORTS, INC., a New York nonprofit corporation; and
DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NINO KOLLER and MICHELLE BROWN, individually and on behalf
of all others similarly situated

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**03/02/2020** at 12:02:01 PM

Clerk of the Superior Court
By Iris Tellez, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: San Diego Superior Court *(El nombre y dirección de la corte es:)* 330 West Broadway San Diego, CA 92101 | CASE NUMBER: *(Número del Caso):* 37-2020-00011819-CU-BT-CTL |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James T. Hannink (131747); Zach P. Dostart (255071); DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Dr., Ste. 530, La Jolla, CA 92037; Tel: (858) 623-4200

| DATE: *(Fecha)* 03/03/2020 | Clerk, by *(Secretario)* D. Tellez, I. Tellez | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Consumer Reports, Inc., a New York nonprofit corporation

under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|

# EXHIBIT D

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|
| James T. Hannink, Esq.<br>Dostart Hannink & Coveney LLP<br>4180 La Jolla Village Drive<br>Suite 530<br>La Jolla, CA  92037<br>*Telephone No:* 858-623-4200 | | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego |
| | *Ref. No. or File No.:* | **03/10/2020** at 04:07:00 PM |
| *Attorney for:* Plaintiff | | Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

*Insert name of Court, and Judicial District and Branch Court:*

San Diego County Superior Court

*Plaintiff:* Nino Koller and Michelle Brown, et al.

*Defendant:* Consumer Reports, Inc, et al.

| **PROOF OF SERVICE**<br>**Summons & Complaint** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>37202000011819CUBTCTL |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment; Declaration of Nino Koller Pursuant to California Civil Code Section  1780(d); Declaration of Michelle Brown Pursuant to California Civil Code Section 1780(d); ADR Information; Stipulation to Use ADR (blank); Electronic Filing Requirements of the San Diego Superior Court - Civil Division; General Order of the Presiding Department

*3. a. Party served:*          Consumer Reports, Inc., a New York nonprofit corporation
   *b. Person served:*       Christian Iarranaga, Person Authorized to Accept Service

*4. Address where the party was served:*          Corporate Creations Network Inc.
                                                  4640 Admiralty Way, 5th Floor
                                                  Marina Del Rey, CA  90292

*5. I served the party:*
   **a. by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Mar. 05, 2020 (2) at: 2:53PM
*6. The "Notice to the Person Served" (on the Summons) was completed as follows:*
   *on behalf of:*  Consumer Reports, Inc., a New York nonprofit corporation
   Under CCP 416.10 (corporation)
*7. Person Who Served Papers:*                          Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. John Gonzalez                          d.  *The Fee for Service was:* $106.25
   **b. Class Action Research & Litigation**  e.  I am: (3)  registered California process server
   P O Box 740                                    *(i)*  Independent Contractor
   Penryn, CA  95663                              *(ii)  Registration No.:*      2971
   c. (916) 663-2562, FAX (916) 663-4955          *(iii)  County:*          Los Angeles

*8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   *Date:  Thu, Mar. 05, 2020*

Judicial Council Form POS-010          PROOF OF SERVICE                    (John  Gonzalez)              do07.205083
Rule 2.150.(a)&(b) Rev January 1, 2007   Summons & Complaint

# EXHIBIT E

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | | |
|---|---|---|
| STREET ADDRESS: | 330 W Broadway | |
| MAILING ADDRESS: | 330 W Broadway | |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 | |
| BRANCH NAME: | Central | |
| TELEPHONE NUMBER: | (619) 450-7074 | |

| PLAINTIFF(S) / PETITIONER(S):   Nino Koller et.al. |
|---|

| DEFENDANT(S) / RESPONDENT(S):   Consumer Reports Inc |
|---|

| KOLLER VS CONSUMER REPORTS INC [IMAGED] | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT**<br>**and CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>37-2020-00011819-CU-BT-CTL |

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Ronald L. Styn                                Department: C-74

## COMPLAINT/PETITION FILED: 03/02/2020

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 09/04/2020 | 10:00 am | C-74 | Ronald L. Styn |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).